**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WP COMPANY LLC**<br>**d/b/a THE WASHINGTON POST**, | |
| 1301 K Street NW<br>Washington, DC 20071 | |
| Plaintiff, | |
| v. | Case No.   24-cv-1353 |
| **NATIONAL HIGHWAY TRAFFIC**<br>**SAFETY ADMINISTRATION**, | |
| 1200 New Jersey Avenue SE<br>Washington, DC 20590 | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff WP Company LLC d/b/a *The Washington Post* (the "*Post*") brings this suit

against Defendant National Highway Traffic Safety Administration ("NHTSA") and states as

follows:

## INTRODUCTION

1.     This is an action brought pursuant to the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.

2.     Through FOIA, the *Post* seeks records from NHTSA related to the safety of motor

vehicles equipped with advanced driver assistance systems.

3.     In particular, the *Post* seeks information about crashes that have occurred when

such driver-assistance systems are engaged, which NHTSA uses to evaluate whether auto

manufacturers are meeting their statutory obligations and to ensure vehicle safety.

4.     According to a recent NHTSA report, an agency investigation into just one such

system, Tesla's "Autopilot" technology, identified hundreds of crashes "where Autopilot was initially alleged to have been in use at the time of, or leading up to, those crashes."[1]

5.      NHTSA makes public some of the information that the *Post* requested, but it has improperly withheld multiple categories of crash-related information at Tesla's insistence.

6.      NHTSA has not justified its blanket withholding of these categories of information, which are responsive to the *Post*'s request.  NHTSA instead improperly denied the *Post*'s request and constructively denied its administrative appeal.

7.      NHTSA's actions violate FOIA and contravene its statutory purpose because the withheld information will greatly inform the public about "what their government is up to," *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989), with respect to regulating the safety of driver assistance technology.

8.      The Court should order NHTSA to produce these public records immediately.

## PARTIES

9.      Plaintiff, the *Post*, is a news organization based in Washington, D.C.  It publishes the leading daily newspaper, by print circulation, in the nation's capital, as well as the website washingtonpost.com, which is among the most widely viewed news sites in the U.S., reaching tens of millions of unique visitors per month, according to independent auditor comScore.  The *Post* also offers an array of mobile, tablet, and digital publishing products, including a cloud-based, digital experience platform licensed to third parties by Arc XP, a division of the company. But outstanding journalism remains the core of the *Post*'s work – and has been recognized with more than 70 Pulitzer Prizes since 1917.

---

[1] *See Additional Information Regarding EA22002*, NHTSA (Apr. 25, 2024), https://static.nhtsa.gov/odi/inv/2022/INCR-EA22002-14496.pdf.

10.    Defendant NHTSA is an agency within the meaning of 5 U.S.C. § 552(f)(1).

NHTSA has possession and control of records requested by the *Post*.

## JURISDICTION AND VENUE

11.    This action arises under FOIA.  This Court has subject matter jurisdiction over

this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) &

(a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

12.    Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

**Tesla's Driver Assistance Technology**

13.    Tesla manufactures vehicles equipped with advanced driver assistance systems.

14.    According to Tesla's website, "Autopilot is an advanced driver assistance system

that enhances safety and convenience behind the wheel."  *See Autopilot and Full Self-Driving*

*Capability*, Tesla, https://www.tesla.com/support/autopilot.  "Autopilot comes standard on every

new Tesla," and is available to purchase depending on when the Tesla was built.  *Id.*

15.    In addition to Autopilot, Tesla describes its "Full Self-Driving capability" as

including features that allow the vehicle to "be able to drive itself almost anywhere with minimal

driver intervention."  *Id.*

16.    In October 2018, Tesla begin "voluntarily releasing quarterly safety data in order

to provide critical safety information about [its] vehicles to the public," including information

related to vehicles using Autopilot technology.  *See Tesla Vehicle Safety Report*, Tesla,

https://www.tesla.com/VehicleSafetyReport.

17.    In January 2023, Tesla stated: "We are proud of Autopilot's performance and its

impact on reducing traffic collisions.  The benefit and promise of Autopilot is clear from the

Vehicle Safety Report data that we have been sharing for 4 years."  *Id.*

**The *Post*'s Reporting On Tesla's Driver Assistance Technology**

18.     For nearly a decade, the *Post* has investigated and reported on the development

and use of driver assistance technology in Tesla vehicles.[2]

19.     For example, in December 2023, the *Post* published an article reporting that there

have been "at least eight fatal or serious wrecks involving Tesla Autopilot on roads where the

driver assistance software could not reliably operate, according to a Post analysis of two federal

databases, legal records and other public documents."  *See* Trisha Thadani et al., *Tesla drivers*

*run Autopilot where it's not intended—with deadly consequences*, Wash. Post (Dec. 10, 2023),

---

[2] *See, e.g.*, Aaron Gregg, *Tesla recalls almost 200,000 vehicles over rearview camera issue*,
Wash. Post (Jan. 26, 2024), https://www.washingtonpost.com/business/2024/01/26/tesla-recall-
rearview-camera/; Faiz Siddiqui & Jeremy B. Merrill, *17 fatalities, 736 crashes: The shocking
toll of Tesla's Autopilot*, Wash. Post (June 10, 2023), https://www.washingtonpost.com/
technology/2023/06/10/tesla-autopilot-crashes-elon-musk/; Faiz Siddiqui et al., *Teslas running
Autopilot involved in 273 crashes reported since last year*, Wash. Post (June 15, 2022),
https://www.washingtonpost.com/technology/2022/06/15/tesla-autopilot-crashes/; Aaron Gregg,
*Tesla Autopilot system was on during fatal California crash, adding to self-driving safety
concerns*, Wash. Post (May 14, 2021),
https://www.washingtonpost.com/technology/2021/05/14/tesla-california-autopilot-crash/;
Michael Laris, *Tesla running on 'Autopilot' repeatedly veered toward the spot where Apple
engineer later crashed and died, federal investigators say*, Wash. Post (Feb. 11, 2020),
https://www.washingtonpost.com/transportation/2020/02/11/telsa-running-autopilot-repeatedly-
veered-toward-spot-where-apple-engineer-later-crashed-died-federal-investigators-say/; Hamza
Shaban, *Tesla Model 3 Autopilot was active before deadly collision, federal investigators say*,
Wash. Post (May 17, 2019), https://www.washingtonpost.com/technology/2019/05/17/tesla-
model-autopilot-was-active-before-deadly-collision-federal-investigators-say/; Cleve R.
Wootson Jr., *Tesla asserts Autopilot 'unequivocally makes the world safer' — days after fiery,
fatal crash*, Wash. Post (Mar. 31, 2018),
https://www.washingtonpost.com/news/innovations/wp/2018/03/31/tesla-asserts-autopilot-
unequivocally-makes-the-world-safer-days-after-fiery-fatal-crash/; Michael Laris, *No defect
found in Tesla 'Autopilot' system used in deadly Florida crash*, Wash. Post (Jan. 19, 2017),
https://www.washingtonpost.com/local/trafficandcommuting/no-defect-found-in-tesla-autopilot-
system-used-in-deadly-florida-crash/2017/01/19/36e4fa7c-de65-11e6-ad42-
f3375f271c9c_story.html; Jacob Bogage, *Tesla driver using autopilot killed in crash*, Wash. Post
(June 30, 2016), https://www.washingtonpost.com/news/the-switch/wp/2016/06/30/tesla-owner-
killed-in-fatal-crash-while-car-was-on-autopilot/; Drew Harwell, *Tesla cars gain self-driving
sentience overnight*, Wash. Post (Oct. 14, 2015), https://www.washingtonpost.com/news/the-
switch/wp/2015/10/14/tesla-cars-gain-self-driving-sentience-overnight/.

https://www.washingtonpost.com/technology/2023/12/10/tesla-autopilot-crash.

20.    Days after the *Post* published this report, NHTSA "announced the largest recall in Tesla's 20-year history," as the automaker "began distributing fixes to more than 2 million vehicles equipped with Autopilot systems found to have 'insufficient' safeguards against driver misuse."  *See* Faiz Siddiqui et al., *Tesla conducts largest-ever recall for 'insufficient' safety controls after exclusive Post report on Autopilot*, Wash. Post (Dec. 13, 2023), https://www.washingtonpost.com/technology/2023/12/13/tesla-autopilot-recall.

21.    In February 2024, the *Post* published a report about the death of Tesla employee and U.S. Marine Corp veteran Hans von Ohain, whose 2022 crash while driving a Tesla Model 3 may be "the first known fatality involving Tesla's most advanced driver-assistance technology," the "Full-Self-Driving" system.  *See* Trisha Thadani et al., *Tesla worker killed in fiery crash may be first 'Full Self-Driving' fatality*, Wash. Post (Feb. 13, 2024), https://www.washingtonpost.com/technology/interactive/2024/tesla-full-self-driving-fatal-crash/.

**NHTSA's Regulation Of Driver Assistance Technology**

22.    Under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 *et seq.*, NHTSA is charged with "reduc[ing] traffic accidents and deaths and injuries resulting from traffic accidents."  In particular, NHTSA must "protect[] the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident."  49 U.S.C. § 30102(9).

23.    Pursuant to this authority, NHTSA issued Standing General Order 2021-01 (the "General Order") in June 2021 "requiring vehicle and equipment manufacturers and operators of [Automated Driving Systems ('ADS')] or Level 2 [Advanced Driver Assistance Systems ('ADAS')] vehicles to report crashes to the agency."  A true and correct copy of the current version of the General Order, effective as of May 15, 2023, is attached as Exhibit 1.

24.     Under the General Order, vehicle manufacturers that use ADS and Level 2 ADAS systems must "report specified information about certain safety-related incidents involving vehicles (including prototype vehicles) operating on publicly accessible roads."  *See* Ex. 1 at 5.

25.     Specifically, NHTSA requires manufacturers to complete incident report forms with information about the vehicle, the scene of the incident, a description of the crash, post-crash information, and a narrative with "a written description of the pre-crash, crash, and post-crash details."  A true and correct copy of an incident report form is attached as Exhibit 2.

26.     NHTSA periodically makes incident report data public, including "all information reported by the reporting entity except information that is or may lead to the disclosure of personally identifiable information and information claimed by the reporting entity to be confidential business information."  *See* Overview, *Standing General Order on Crash Reporting*, NHTSA, https://www.nhtsa.gov/laws-regulations/standing-general-order-crash-reporting.

27.     With only three exceptions, "NHTSA has determined that the information required" from manufacturers "does not include any potential [confidential business information ('CBI')] exempt from public disclosure." Ex. 1 at 13.  For all but these three exceptions, the General Order provides that NHTSA "will not keep this information confidential, intends to make it publicly available, and is providing no assurance to [manufacturers] to the contrary."  *Id.* (citing *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019)).

28.     The General Order provides that manufacturers may "claim, when appropriate and appropriately supported," protection for CBI only as to three categories of information: "(1) the hardware and software versions of the ADAS/ADS with which a vehicle is equipped; (2) whether the vehicle was within its operational design domain (ODD) at the time of the incident;

and (3) the narrative." *Id.*; *see also id.* at 32 ("NHTSA has determined that only three of the

categories . . . request information that *potentially* could be CBI . . . .") (emphasis added).

29. The General Order expressly cautions, however, that "[m]aking a request for

confidential treatment does not ensure that the information claimed to be confidential will be

determined to be confidential." *Id.* at 14.

30. The information included in these forms is of significant public interest. As the

*Post* reported, "Since federal regulators began requiring automakers to report crashes involving

driver-assistance systems in 2021, they have logged more than 900 in Teslas," at least 40 of

which "resulted in serious or fatal injuries." *See* Trisha Thadani et al., *Tesla worker killed in*

*fiery crash may be first 'Full Self-Driving' fatality*, Wash. Post (Feb. 13, 2024),

https://www.washingtonpost.com/technology/interactive/2024/tesla-full-self-driving-fatal-crash/.

31. Moreover, NHTSA uses the incident report data to, *inter alia*, "evaluate whether

specific manufacturers . . . are meeting their statutory obligations," to "identify crashes

warranting further follow-up," and to gather "information regarding potential defects in ADS or

Level 2 ADAS." Ex. 1 at 4-5.

32. NHTSA has stated that it is "critical for NHTSA to exercise its robust oversight

over potential safety defects in vehicles operating with ADS and Level 2 ADAS." *Id.* at 2.

33. Access to this data thus allows the public to evaluate how well NHTSA performs

its statutory duties.

**The *Post*'s FOIA Request And NHTSA's Response**

34. On May 30, 2023, the *Post* submitted a FOIA request to NHTSA seeking the

"Level 2 ADAS incident report data spreadsheet in unredacted format," including, in particular,

unredacted information reported in the columns labeled "ADAS/ADS Version" ("Version"),

"Within ODD?" ("ODD"), and "Narrative." A true and correct copy of the *Post*'s FOIA request

is attached as Exhibit 3.

35.    The *Post* noted in its request that "NHTSA's instructions to Reporting Entities state that 'CBI requests should be narrowly tailored,'" but that "Tesla redacts these columns in every instance," whereas "many other entities, including Honda, Subaru and BMW, only partially redact some entries." *Id.*

36.    On January 22, 2024, NHTSA issued a "partial response" to the *Post*'s request, stating that the agency was denying the *Post*'s request to access information contained in the Version, ODD, and Narrative columns because "NHTSA granted Tesla's requests for confidential treatments for those fields pursuant to FOIA Exemption 4."  A true and correct copy of NTHSA's denial is attached as Exhibit 4.

37.    NHTSA also produced a copy of Tesla's confidential treatment requests and NHTSA's confidentiality determination, consisting of one letter from NHTSA to Tesla followed by 102 nearly identical copies of a letter and certificate that Tesla sent to NHTSA seeking confidential treatment of those three categories of information.  A true and correct copy of NHTSA's letter to Tesla is attached as Exhibit 5, and one of the nearly identical Tesla letters (with supporting certificate) is attached as Exhibit 6.

38.    NHTSA further stated that it withheld "information whose disclosure would constitute a clearly unwarranted invasion of personal privacy pursuant to FOIA Exemption 6." *See* Ex. 4 at 1.  Specifically, NHTSA withheld all information pertaining to the location of the reported crashes—including latitude, longitude, address, and zip code—on the ground that it may contain personally identifiable information.

**The *Post*'s Appeal And NHTSA's Constructive Denial**

39.    The *Post* timely appealed NHTSA's denial on March 22, 2024.  A true and correct copy of the *Post*'s appeal (without attachments) is attached as Exhibit 7.

40.     The *Post*'s appeal stated, *inter alia*, that NHTSA cannot satisfy the requirements of Exemption 4 "as to all of the information it has withheld in the three redacted spreadsheet columns," and that "[i]ts withholdings are therefore improper."  Ex. 7 at 5.  The *Post* explained that NHTSA cannot show that Tesla "both customarily and actually treated" the information as private and that NHTSA "reasonably foresees that disclosure would harm an interest protected by" Exemption 4.  *Id.* at 5-8.

41.     The *Post* also stated that NHTSA has determined most of the information that Tesla and other vehicle manufacturers submit in their incident reports is presumptively public, including speed and whether an ADAS system was engaged at the time of the crash.  *See* Ex. 7 at 7.  But according to former NHTSA senior safety advisor Missy Cummings, Tesla often leaves these fields blank and discloses the information only in the redacted Narrative field.  *Id*.  As Dr. Cummings told the *Post*: "When I was inside NHTSA, I could read the narratives.  They were hiding a bunch of data in the narratives.  No company was as egregious as Tesla."  *Id.*  To the extent that Tesla includes in its Narratives information that NHTSA considers non-CBI, therefore, NHTSA cannot justify withholding that information simply because Tesla chose to include that information in a different spreadsheet column.

42.     Moreover, the *Post* noted that Tesla "failed to satisfy the procedural requirements for seeking confidential treatment of the information it reported to NHTSA."  *Id.* at 7-8.

43.     The *Post* additionally explained that NHTSA's withholdings on personal privacy grounds under Exemption 6 are improper "[g]iven the lack of privacy interest in the locations of these crashes and the substantial public interest in these locations."  *Id.* at 9.

44.     On March 25, 2024, NHTSA acknowledged receipt of the *Post*'s appeal and assigned it file number NHTSA 240325-004.  A true and correct copy of NHTSA's

acknowledgment is attached as Exhibit 8.

45.     NHTSA was required to respond to the *Post*'s appeal within twenty working days. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

46.     To date, NHTSA has not responded to the *Post*'s appeal.

## CLAIM FOR RELIEF

### COUNT I
### Declaratory and Injunctive Relief:
### Constructive Denial in Violation of FOIA, 5 U.S.C. § 552

47.     The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

48.     FOIA provides this Court with "jurisdiction to enjoin [NHTSA] from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]."  5 U.S.C. § 552(a)(4)(B).

49.     The withheld records the *Post* seeks, which are the subject of the *Post*'s request to NHTSA, are agency records within NHTSA's control.

50.     NHTSA denied the *Post*'s FOIA request on January 22, 2024.

51.     The *Post* submitted an administrative appeal of NHTSA's denial on March 22, 2024, and NHTSA acknowledged receipt of the *Post*'s appeal on March 25, 2024.

52.     Pursuant to FOIA, NHTSA was required to make and communicate to the *Post* a "determination" on its appeal within twenty working days.  5 U.S.C. § 552(a)(6)(A)(ii).

53.     To date, NHTSA has neither made nor communicated to the *Post* a "determination" on its appeal within the meaning of 5 U.S.C. § 552(a)(6)(A)(ii).  NHTSA has instead failed to respond to the appeal and thus constructively denied it.

54.     There is no basis under FOIA to withhold, in whole or in part, the records that the *Post* requested.  NHTSA has wrongfully withheld agency records in violation of FOIA.

55.     The *Post* requests a declaratory judgment that NHTSA has violated FOIA and that the *Post* is entitled to immediately receive the requested records.

56.     The *Post* further requests that, pursuant to FOIA, the Court issue an injunction directing NHTSA to produce the requested records in full and setting a deadline for compliance.

## REQUEST FOR RELIEF

WHEREFORE, the *Post* respectfully requests that this Court:

A.      Declare NHTSA's failure to provide responsive records unlawful under FOIA;

B.      Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing NHTSA to make the requested records available to the *Post*, unredacted, and without further delay, and setting a deadline for compliance;

C.      Provide for expeditious proceedings in this action;

D.      Award the *Post* its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.      Grant such other and further relief as the Court may deem just and proper.

Dated:  May 9, 2024                    Respectfully submitted,

                                        BALLARD SPAHR LLP

                                        /s/ *Charles D. Tobin*
                                        Charles D. Tobin (#455593)
                                        Maxwell S. Mishkin (#1031356)
                                        1909 K Street NW, 12th Floor
                                        Washington, DC 20006
                                        Tel: (202) 661-2200
                                        Fax: (202) 661-2299
                                        tobinc@ballardspahr.com
                                        mishkinm@ballardspahr.com

                                        *Counsel for Plaintiff WP Company LLC*
                                        *d/b/a The Washington Post*