**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WP CO., LLC,
d/b/a THE WASHINGTON POST

        Plaintiff,

   v.

NATIONAL HIGHWAY TRAFFIC
SAFETY ADMINISTRATION                          Civil Action No. 24-cv-1353 (TSC)

        Defendant,

   and

TESLA, INC.

        Intervenor-Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

LEGAL STANDARD.................................................................................................... 5

ARGUMENT ................................................................................................................. 8

I.     The Agency's Withholdings Under Exemption 4 Are Appropriate ...................... 8

     A.    The Agency's Hardware and Software Version of CBI Withholdings Are Appropriate ............................................................... 10

     B.    The Agency Appropriately Withheld Operational Design Domain Information ........................................................................... 11

     C.    The Agency's Withholdings Relating to the Narrative of the Incident Are Appropriate ............................................................... 13

II.    The Agency's Withholdings Under Exemption 6 Are Appropriate .................... 14

     A.    The Information Withheld Qualifies for Exemption 6 Withholdings....... 15

     B.    Release of the Information Would Compromise a Substantial Privacy Interest..................................................................................... 16

     C.    The Privacy Interest Outweighs the Public Interest................................. 17

III.   The Agency Appropriately Disclosed All Reasonably Segregable, Non-Exempt Information ............................................................................................. 18

CONCLUSION............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95 (D.D.C. 2004) ........................................ 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 6

*Armstrong v. Exec. Off. of the President*, 97 F.3d 575 (D.C. Cir. 1996) .............................. 16, 18

*Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312 (D.C. Cir. 2006) ................................ 9

*Benjamin v. Dep't of State*, 178 F. Supp. 3d 1 (D.D.C. 2016),
    *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) .................................................. 6

*Canning v. Dep't of Just.*, 567 F. Supp. 2d 104 (D.D.C. 2008) ........................................ 18

*Cause of Action Inst. v. Export-Import Bank of the United States*,
    521 F. Supp. 3d 64 (D.D.C. 2021) ............................................................... 8

*Cause of Action Institute v. Export-Import Bank of the United States*,
    No. 19-1915, 2022 WL 252028 (D.D.C. Jan. 27, 2022) ............................................. 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................... 6

*Center for Auto Safety v. the Agency*, 809 F. Supp. 148 (D.D.C. 1993) ................................ 17

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*,
    746 F.3d 1082 (D.C. Cir. 2014) ................................................................ 6, 7

*Coleman v. Lappin*, 607 F.Supp.2d 15 (D.D.C. 2009) ................................................. 15

*CREW v. Dep't of Lab.*, 478 F. Supp. 2d 77 (D.D.C. 2007) ............................................. 7

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
    436 F. Supp. 3d 90 (D.D.C. 2019) ............................................................... 8

*Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ....................... 7, 18

*Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1 (D.C. Cir. 2014) ................................ 7

*Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051 (D.C. Cir. 2023) ............. 10

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ................................... 9, 12

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) ...................................... 15, 16

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009) ............................................. 7

*Lepelletier v. FDIC*, 164 F.3d 37 (D.C. Cir. 1999).......................................................... 15

*Lewis v. Dep't of Justice*, 867 F.Supp.2d 1 (D.D.C. 2011)............................................... 15

*McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983) ............................................................ 6

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977)............................ 18

*Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131 (D.D.C. 2011) ....................................... 7

*Mil. Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981) ................................................. 7

*Moore v. Bush*, 601 F. Supp. 2d 6 (D.D.C. 2009)................................................................ 6

Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26 (D.C. Cir. 2002) .................................... 17

*Nat'l Ass'n of Ret. Fed. Emps. v. Horner*, 879 F.2d 873 (D.C. Cir. 1989)................................ 16

*Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183 (D.C. Cir. 1973) ....................................... 6

*Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280 (D.C. Cir. 1983).................................... 9

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194 (D.D.C. 2007) ............... 6

*Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*,
   3 F.4th 350 (D.C. Cir. 2021) ............................................................................................ 7

*Ryan v. FBI*, 174 F. Supp. 3d 486 (D.D.C. 2016),
   *summ. aff'd*, No. 16-5108, 2016 WL 6237841 (D.C. Cir. Sept. 16, 2016)........................... 6

*Santana v. Dep't of Just.*, 828 F. Supp. 2d 204 (D.D.C. 2011) .................................................. 6

*Smith v. Dep't of Lab.*, 798 F. Supp. 2d 274 (D.D.C. 2011) ................................................. 17

*U.S. Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ....................................................... 15

*U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982) ............................................... 15

*Weisberg v. Dep't of Just.*, 627 F.2d 365 (D.C. Cir. 1980) ................................................. 6

*Weisberg v. Dep't of Just.*, 705 F.2d 1344 (D.C. Cir. 1983) ............................................... 6

*WP Co. LLC v. SBA*, No. 20-1240, 575 F. Supp. 3d 114 (D.D.C. Dec. 13, 2021) ........................ 8

**Statutes**

49 U.S.C. § 30167 ............................................................................................... 10

5 U.S.C. § 552(a)(4)(B) ........................................................................................ 7

5 U.S.C. § 552(a)(8)(A)(i)(I) ................................................................................ 7

5 U.S.C. § 552(b)(4) ......................................................................................... 2, 8

5 U.S.C. § 552(b)(6) ....................................................................................... 2, 15

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................. 5

**Regulations**

49 C.F.R. § 512.20(a) ........................................................................................... 4

49 C.F.R. Part 512 .............................................................................................. 10

49 C.F.R. Part 565 .............................................................................................. 17

This case involves a Freedom of Information Act ("FOIA") request submitted by Plaintiff WP Co., LLC d/b/a The Washington Post (the "Post") to the National Highway Traffic Safety Administration (the "Agency") seeking information relating to certain automobile incidents that occurred while an advanced driver assistance system was engaged.  *See* Compl. ¶¶ 2-3 (ECF No. 1).  The Agency undertook appropriate efforts to search for and provide responsive records. The Post does not dispute the adequacy of the Agency's search but instead claims that the Agency improperly withheld certain information pursuant to Exemptions 4 and 6, relating to specific details of each incident.  *See* Jan. 9, 2025, Joint Status Report, at 5 (ECF No. 22).  Given their equities in the withholdings under Exemption 4, Tesla, Inc. ("Tesla") sought and received leave to intervene in this matter.  *See* Dec. 12, 2024, Order (ECF No. 19).  As explained herein, in the attached Statement of Undisputed Material Facts, declarations of Shonda Humphrey ("Humphrey Decl.") and Michael Kuppersmith ("Kuppersmith Decl."), and *Vaughn* index, as well as in Tesla's own motion and supporting documents ("Gates Decl."),[1] no questions of material fact remain, and the Administration is entitled to judgment as a matter of law.

## INTRODUCTION

The information sought by the Post was submitted to the Agency by various entities—certain manufacturers and operators of vehicles equipped with Automated Driving Systems ("ADS") and Level 2 Advanced Driver Assistance Systems ("ADAS") vehicles—which are required to report specified incidents to the Agency.  The Agency produced information responsive to the Post's FOIA request but withheld certain information pursuant to FOIA Exemptions 4 and

---

[1]     Tesla, as intervenor-defendant, has filed its own motion for summary judgment and supporting documents this same day.

6.   The sole remaining issue before the Court is whether the Agency's withholdings were appropriate.

The Agency properly applied Exemption 4 to certain categories of information for which the reporting entities had requested confidential treatment at the time of submission.  Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  The Agency appropriately determined that the information in question was customarily and actually kept private by the submitters, and that further disclosure would cause foreseeable commercial harm to both the reporting entities and the Agency.

Similarly, the Agency properly applied Exemption 6 to certain categories of information that constitute personally identifiable information.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  The Agency appropriately determined that release of this information would substantially compromise the privacy interests of third-party private individuals who were involved in the underlying automobile incidents.

## STATEMENT OF FACTS

On April 5, 2023, the Agency issued the Standing Order.  Kuppersmith Decl. ¶ 12.  The Standing Order requires vehicle and equipment manufacturers and operators of vehicles equipped with Automated Driving Systems ("ADS") and Level 2 Advanced Driver Assistance Systems ("ADAS")[2] that have been served with the Standing Order to report crashes and incidents that occurred while these systems were in use.  Kuppersmith Decl. ¶ 12.  The incident reports must be

---

[2] Under the Standing Order, a Level 2 ADAS feature is a driver support feature on the vehicle that can control both steering and braking/accelerating simultaneously under some circumstances. The human driver must remain fully and continuously engaged in the driving task.

electronically submitted using an online portal and a template form, which identifies several categories of information to be submitted. Kuppersmith Decl. ¶¶ 12, 17; *see also* Standing Order (ECF No. 1-1) at 17, 29, 39.

The Standing Order states that, with three exceptions, the Agency predetermined that the information submitted was deemed not to include any confidential business information ("CBI") that would be exempt from disclosure under Exemption 4. Kuppersmith Decl. ¶ 13; Standing Order (ECF No. 1-1) at 14. The Agency based this determination on an evaluation of the highly competitive nature of the automotive industry, particularly in the emerging technology space of vehicle advanced driver systems. Kuppersmith Decl. ¶ 21. The Agency concluded that there was a reasonable and foreseeable risk of competitive harm if information relating to the specifics of how each submitter's software, hardware, and technology worked were subject to public disclosure. Kuppersmith Decl. ¶ 21. The Standing Order therefore permits submitters to request CBI protections for three exceptions that are more likely to reveal proprietary aspects of ADAS/ADS design and technology. Kuppersmith Decl. ¶ 15.

The three exceptions for which reporting entities were allowed to claim CBI protections were limited to: "(1) the hardware and software versions of the ADAS/ADS on the vehicle at the time of the incident; (2) whether the vehicle was within its Operational Design Domain ("ODD") at the time of the incident; and (3) the reporting entity's narrative of the incident." Kuppersmith Decl. ¶ 14; Standing Order (ECF No. 1-1) at 14-15. These three categories were treated differently for confidentiality purposes from the other reporting fields under the Standing Order because the information reported under each of these three categories is more likely to reveal proprietary aspects of the system's design. Kuppersmith Decl. ¶ 21. In contrast, information reported for the

other fields in the Standing Order focuses on more public-facing characteristics of an incident, such as the city in which the crash occurred.  *See* Standing Order (ECF No. 1-1) at 12-13.

The Agency provided instructions on how an entity could request CBI protections for the three specific categories within the Standing Order.  Kuppersmith Decl. ¶ 17; Standing Order (ECF No. 1-1) at 33.  The Agency expressly noted, however, that an entity's request for CBI protection did not guarantee that the Agency would grant such protections, and instructed the entities to narrowly tailor CBI requests.  Kuppersmith Decl. ¶ 16; Standing Order (ECF No. 1-1) at 14-15.

The Agency publishes the incident reports collected under the Standing Order on a monthly basis, after first reviewing them and redacting both personally identifiable information ("PII") as well as information claimed to be CBI.[3]  Kuppersmith Decl. ¶ 18.  These reports are published on the Agency's website.[4]

On May 30, 2023, the Post submitted a FOIA request (the "Request") to the Agency seeking the Agency's "Level 2 ADAS incident report data spreadsheet in unredacted format, including the unredacted 'ADAS/ADS Version', 'Within ODD?', and 'Narrative' columns." Humphrey Decl. ¶ 6; *see also* Request (ECF No. 1-3).

On January 22, 2024, the Agency provided a partial response to the Request and advised the Post that the Agency had granted a set of Tesla's requests for confidential treatment of the withheld columns pursuant to the Standing Order, and that the Agency was therefore withholding

---

[3] The Agency's regulations regarding CBI requests require it to treat information subject to a properly filed confidentiality request as confidential until a determination regarding its confidentiality is made.  49 C.F.R. § 512.20(a).

[4] *Level 2 ADAS Incident Report Data*, available at https://static.nhtsa.gov/odi/ffdd/sgo-2021-01/SGO-2021-01_Incident_Reports_ADAS.csv.

that information under Exemption 4.[5]  Humphrey Decl. ¶ 7; *see also* Jan. 22, 2024, Letter (ECF No. 1-4).  Specifically, the Agency noted that, after engaging in its own analysis of the CBI requests submitted by Tesla, it had determined that Exemption 4 applied.  Humphrey Decl. ¶ 7; *see also* Oct. 3, 2023, Letter (ECF No. 1-5).

 The Agency additionally withheld PII pursuant to Exemption 6.  *See* Jan. 22, 2024, Letter (ECF No. 1-4).   This information included specific geographical locations of reported crashes, including latitude, longitude, address, and zip code, and information on when the incident occurred, including the date the incident occurred and when the reporting entity received notice of the incident.  Humphrey Decl. ¶ 13. It also included the last six digits of the Vehicle Identification Number ("VIN").  Humphrey Decl. ¶ 16.[6]

The Post appealed the Agency's response on March 22, 2024, asserting that the Agency's withholdings under both Exemptions 4 and 6 were improper.  Compl. ¶¶ 39-43; *see also* Appeal (ECF No. 1-7).  Notably, the Post did not appeal the adequacy of the Agency's search, nor has it taken issue with the Agency's search at any point during the pendency of this litigation.  *See* Compl. ¶¶ 39-43; Appeal (ECF No. 1-7); Jan. 9, 2025, Joint Status Report (ECF No. 22).

Before the Agency could respond to the Post's appeal, the Post filed the present Complaint.

**LEGAL STANDARD**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact

---

[5] Most of the reports in the spreadsheet referenced in the Request were submitted by Tesla. The entirety of the Agency's first partial response to the Request related to reports submitted by Tesla, although other manufacturers' reports were included in the Agency's subsequent productions.

[6] The Agency also withheld signatures and PII of the crash investigator for each incident, but the Post is not challenging those withholdings.

is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

FOIA cases are typically decided on motions for summary judgment. *Ryan v. FBI*, 174 F. Supp. 3d 486, 490 (D.D.C. 2016), *summ. aff'd*, No. 16-5108, 2016 WL 6237841 (D.C. Cir. Sept. 16, 2016); *see also Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)). In the FOIA context, an agency is entitled to summary judgment if it "proves that it has fully discharged its obligations" under FOIA. *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007) (citing *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). To do so, an agency must prove that each document responsive to the request(s) has been produced, is unidentifiable, or is wholly exempt from disclosure. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See, e.g.*, *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Santana v. Dep't of Just.*, 828 F. Supp. 2d 204, 208 (D.D.C. 2011); *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 97 (D.D.C. 2004).

If redacting or withholding records, the agency must prove that its claimed exemptions apply. *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citing *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749,

755 (1989)); *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014); 5 U.S.C. § 552(a)(4)(B).    To do so, the agency must submit evidence proving that it is "logical" or "plausible" that the invoked FOIA exemptions apply.    *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) (citing *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).    "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"    *CREW v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).    When relying on an affidavit or declaration, the evidence must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [that the evidence is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith."    *CREW*, 746 F.3d at 1088 (quoting *Larson*, 565 F.3d at 862).

Additionally, an agency may withhold information under a FOIA exemption—even if it falls within the scope of the exemption—only if "the agency reasonably foresees that disclosure would harm an interest protected by [that] exemption."    5 U.S.C. § 552(a)(8)(A)(i)(I); *see also Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369-70 (D.C. Cir. 2021).    To satisfy this standard, an agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials," and it must "connect [such] harms in a meaningful way to the information

withheld." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (cleaned up) (citation omitted).

Agency declarations are sufficient to lay out the basis of the foreseeable harm. *See, e.g., Cause of Action Institute v. Export-Import Bank of the United States*, No. 19-1915, 2022 WL 252028, at *19 (D.D.C. Jan. 27, 2022) (agency declarations describing harm under Exemption 4 sufficient to establish foreseeable harm); *Cause of Action Inst. v. Export-Import Bank of the United States*, 521 F. Supp. 3d 64, 94 (D.D.C. 2021) (agency declarations describing threat to privacy under Exemption 6 sufficient to establish foreseeable harm); *see also WP Co. LLC v. SBA*, No. 20-1240, 575 F. Supp. 3d 114, 118–19 (D.D.C. Dec. 13, 2021) ("the same documents that establish that the withheld information is 'privileged or confidential' provide the requisite explanation of foreseeable harm").

## ARGUMENT

At issue is the appropriateness of the Agency's withholdings under both Exemption 4 and Exemption 6. Specifically, the Post has challenged the Agency's grant of Tesla's and other reporting entities' CBI requests with respect to the hardware and software versions, whether the vehicle was in the operational design domain, and the narrative of the incident, and the subsequent withholding of that information under Exemption 4. Additionally, the Post has challenged the Agency's withholding of the location data of each incident and the Vehicle Identification Number ("VIN") of each vehicle under Exemption 6. However, the Agency's withholdings under each of these Exemptions is appropriate, and the Agency is therefore entitled to summary judgment.

## I.    **The Agency's Withholdings Under Exemption 4 Are Appropriate**

FOIA Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Courts in this Circuit have long held that "commercial or financial information" are broad terms

to be given their "ordinary meanings" and are protected so long as the submitter of the information has a "commercial interest" in them. *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983); *see also Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006). Such information is "confidential" under Exemption 4 if it is "customarily kept private, or at least closely held, by the person imparting it." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019). In *Argus Leader*, the Supreme Court held that commercial or financial information is "confidential" within the meaning of Exemption 4 "[a]t least" where the information is "customarily and actually treated as private by its owner" and, perhaps, "provided to the government under an assurance of privacy." *Id.* at 2366.

The information withheld under Exemption 4 falls into three categories, which align precisely with the same three categories for which the Agency limited the availability of CBI in the Standing Order. Standing Order (ECF No. 1-1) at 14-15. And while the Agency cautioned reporting entities that CBI requests were not guaranteed, the information in those three categories does, as a preliminary matter, potentially falls under the aegis of *Argus Leader* as information that was provided to the government with at least some expectation of privacy. *Argus Leader*, 139 S. Ct. at 2366. Those three categories—the applicable hardware and software versions, whether the vehicle was in its operational design domain, and the narrative of the incident—are all customarily and actually kept close by the reporting entities and the release of those categories of information would reasonably and foreseeably harm those entities' commercial and financial interests.

As a preliminary matter, Tesla's filings in this case exemplify the extent to which reporting entities themselves consider the information at issue to be CBI. *See, e.g.*, Gates Decl. ¶ 19 (noting that all the material for which Tesla requested CBI protection is "technical and proprietary information" that "Tesla does not disclose . . . publicly in the ordinary course of its business").

- 9 -

Tesla provided its confidential business information to the Agency "with the understanding and expectation, based in part on the terms of the [Standing Order], that this information will remain confidential." Gates Decl. ¶ 23. The Agency concurs that "the reporting entities submitted the information to the agency under the Agency's framework of statutory and regulatory provisions governing confidential information, which provides an assurance of privacy for confidential business information." Kuppersmith Decl. ¶ 20 (citing 49 U.S.C. § 30167; 49 C.F.R. Part 512, Subpart E). This framework is in place for all reporting entities, and when other reporting entities submit CBI requests, the Agency treats them in the same manner, providing an assurance of privacy for CBI when those requests are supported appropriately—as was the case for the grants the Agency issued in this matter.

### A. The Agency's Hardware and Software Version of CBI Withholdings Are Appropriate

The Agency found that the hardware and software versions of ADAS/ADS on the vehicle at the time of the incident with which the vehicles are equipped would, if disclosed, reasonably harm Tesla's and other reporting entities' commercial or financial interests and could, in turn, impact those companies' future willingness to provide confidential information, thus harming the Agency's own safety mission. Kuppersmith Decl. ¶ 20; *see also* Gates Decl. ¶ 17.

As the Agency determined in its initial analysis (ECF No. 1-5), Tesla had sufficiently established that this information was customarily private, or at least closely held. *See Flyers Rights Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051, 1058 (D.C. Cir. 2023) ("[I]nformation communicated to another remains confidential whenever it is customarily kept private, or at least closely held, by the person imparting it"). And the Agency further determined that, given the "highly competitive automotive industry," especially in the context of ADAS/ADS, the public release of "how Tesla's software and vehicle technology work" would cause competitive harm to

Tesla.  Oct. 4, 2023, Letter (ECF No. 1-5); *see also* Kuppersmith Decl. ¶¶ 15, 20.  The Agency made similar determinations with respect to CBI requests submitted by other reporting entities.

Tesla has provided further detail, explaining that it does not publicly disclose this information because of the potential for competitive harm.  Specifically, "[p]ublic release of ADAS hardware and software versions would permit competitors to, among other things: (a) assess the efficacy of a given version of hardware or software; (b) calculate the number of crashes per the different software and hardware systems, and thereby draw conclusions as to Tesla's rate of progress; and (c) use crash information for a given hardware or software version to disparage Tesla."  Gates Decl. ¶ 29.

The Agency independently assessed that explanation and reasonably determined that the hardware and software version information warrants CBI treatment and withholding under Exemption 4.  Kuppersmith Decl. ¶ 25.  And again, Tesla has confirmed that it would not have provided this information but for the regulatory obligations imposed by the Standing Order.  Gates Decl. ¶ 17. The Agency has thus reasonably determined that releasing the information would not only cause a foreseeable commercial harm to Tesla, but it would also cause a foreseeable harm to the Agency and negatively impact the Agency's ability to continue obtaining otherwise confidential information necessary for its safety mission.  Kuppersmith Decl. ¶¶ 20, 28.  The same reasonable determination applies to the other reporting entities whose CBI requests the Agency reviewed.  This category of information is therefore appropriately withheld under Exemption 4.

**B.  The Agency Appropriately Withheld Operational Design Domain Information**

The Agency next withheld the Operational Design Domain ("ODD") information under Exemption 4, again determining that the release of this information would cause a reasonably foreseeable harm to both Tesla and the Agency.  Under the Standing Order, the ODD refers to operating conditions under which a given ADS or ADS feature is designed to function. This

includes, but is not limited to, environmental, geographical, and time-of-day restrictions, and/or the presence or absence of certain traffic or roadway characteristics. *See* Standing Order (ECF No. 1-1), at 4 n.9. An ODD is typically defined by the developer of the automation system and may implicate specific aspects of how the system is designed. As such, certain information about an ODD may implicate design considerations that are not customarily made public by the manufacturer

Here too, Tesla's filings illustrate the extent to which it—and other reporting entities—customarily and actually keeps the information reported in the ODD field closely held and does not disclose it publicly. Gates Decl. ¶ 19. And Tesla has again confirmed that it provided this information to the Agency with the "understanding and expectation" based on the Standing Order that the information would remain confidential. Gates Decl. ¶ 23. As the Agency therefore determined, Tesla has met its initial burden under *Argus Leader*, both with respect to the customary level of privacy and the expectation of confidentiality. *See Argus Leader*, 139 S. Ct. at 2366. Likewise, the Agency made the same determination regarding the CBI requests made by other reporting entities.

The Agency has independently assessed Tesla's CBI request and explanation and has reasonably determined that the ODD information warrants CBI treatment and withholding under Exemption 4. Kuppersmith Decl. ¶ 25. In particular, the Agency determined that the competitive nature and developing technology within the ADAS/ADS space was particularly ripe for competitive harm if proprietary information relating to the software, hardware, and technological capabilities of each submitter's systems were disclosed. Kuppersmith Decl. ¶¶ 15, 21. As with the version ADAS/ADS information, the Agency has reasonably determined that disclosure would foreseeably harm both Tesla and the Agency, and its withholding of this information under

Exemption 4 is therefore appropriate.  For similar reasons, the Agency's withholding of the same category of information for other reporting entities is equally appropriate.

### C. The Agency's Withholdings Relating to the Narrative of the Incident Are Appropriate

Finally, the Agency withheld portions of the narrative column under Exemption 4, determining that at least some of the information therein would cause a reasonably foreseeable harm if disclosed. Under the Standing Order, the narrative field solicits a brief description of the crashes that occur while an ADAS was engaged at the time of crash. Standing Order (ECF No. 1-1) at 5; Gates Decl. ¶ 20.

As a starting point, the Agency conducted a careful and independent examination of the information for which Tesla and the other reporting entities requested CBI protections, and it has not "rubber-stamped" its approval of those requests.  In fact, the Agency denied several of Tesla's requests for withholdings of the narrative information.  Kuppersmith Decl. ¶ 21(a)-(d).  Thus, while Tesla's narrative section includes details such as the source of the incident information, the date when Tesla was notified, the Vehicle Owner's Questionnaire numbers, and the date(s) of any communications with the Agency regarding the incident, the Agency determined that those types of information could not be considered CBI and would not reasonably cause harm if disclosed. Kuppersmith Decl. ¶ 21.  The Agency also denied Tesla's request for CBI with respect to two incidents where Tesla made public statements regarding the incidents, thus removing any expectations of privacy from those incidents.  Kuppersmith Decl. ¶ 21(e).  Pursuant to the Agency's regulations, the Agency notified Tesla that it would not be granting the CBI requests for this information, and Tesla did not appeal that determination.   Kuppersmith Decl. ¶ 23. Accordingly, that information was produced to the Post.

With respect to the remainder of the information in the narrative section, however, the Agency determined that Tesla and the other reporting entities would face a reasonably foreseeable competitive or financial harm if the information was disclosed.  Kuppersmith ¶ 20.  The Agency concurs with Tesla that the public release of this information would provide Tesla's competitors a wealth of information that could aid competitors in their development and/or harm Tesla through disparagement or comparison.  Kuppersmith Decl. ¶¶ 15, 25.  Specifically, the information in the narrative section could, if released, allow competitors to track the pace of Tesla's development and compare the effectiveness of Tesla's models, draw inferences and attempt to copy Tesla's internal processes, and/or find weaknesses and strengths in Tesla's systems for use in developing their own systems.  Kuppersmith Decl. ¶¶ 20, 25.  Additionally, the narrative section included customer privacy information involving individual driver behavior, that may also include preliminary information that would be updated upon further investigation.  Gates Decl. ¶¶ 33-34.

The Agency independently assessed Tesla's explanation and determined that specific portions of the narrative warranted CBI treatment and withholding under Exemption 4. Kuppersmith Decl. ¶¶ 15, 21, 25.  As with the other categories of information, the Agency reasonably determined that disclosure would foreseeably harm both Tesla and the Agency, and its withholding of this information under Exemption 4 is therefore appropriate.  And as with the other categories of information, the Agency's determination is correspondingly appropriate with respect to the other reporting entities.

Summary judgment is therefore appropriate with respect to the Agency's application of Exemption 4.

## II.    **The Agency's Withholdings Under Exemption 6 Are Appropriate**

The Agency applied Exemption 6 to the geographic location data for incidents and for the vehicle identification number ("VIN") of the vehicle involved.  Humphrey Decl. ¶¶ 13-16.

Specifically, the Agency withheld the latitude, longitude, address, and zip code details of each incident, as well as the last six digits of the VIN.  Humphrey Decl. ¶¶ 13-16.[7]

### A.  The Information Withheld Qualifies for Exemption 6 Withholdings

FOIA Exemption 6 protects information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Notably, "[t]he Supreme Court has interpreted the phrase, 'similar files' to include all information that applies to a particular individual," *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), and the Supreme Court has further recognized that "the protection of Exemption 6 is not determined merely by the nature of the file in which the requested information is contained." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601 (1982) (citing *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)).  This broad interpretation of the meaning of the phrase "similar file" has led courts to conclude that Exemption 6 protection not only relates to entire physical files, but also encompasses "bits of personal information" that refer to a particular individual. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006).

In this regard, courts have held specifically that Exemption 6 covers "such items as a person's name, address, place of birth, employment history, and telephone number[,]" *Lewis v. Dep't of Justice*, 867 F.Supp.2d 1, 17 (D.D.C. 2011), notwithstanding the nature of the document or file within which this information appears. *See, e.g., Coleman v. Lappin*, 607 F.Supp.2d 15, 22 (D.D.C. 2009) (holding that "such items as individuals' names, titles, Social Security numbers, dates of birth, pay grades, union affiliations, and dates of duty" were properly withheld under Exemption 6). Given this broad application, the information at issue here—the geographical

---

[7] As discussed in footnote 5, *supra*, the Agency's other withholdings under Exemption 6 are not at issue in this case.

location of the incidents and the VINs—easily satisfies Exemption 6's "similar file" categorization.

### B. Release of the Information Would Compromise a Substantial Privacy Interest

The next question is whether disclosure of the information "would compromise a substantial, as opposed to *de minimis*, privacy interest." *Nat'l Ass'n of Ret. Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).  The "privacy interest at stake may vary depending upon the context in which it is asserted." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996).  Here, the privacy interest is extraordinarily strong, as it applies to individual drivers and third-party owners and operators of vehicles, who have a substantial interest in their personal privacy, including their address and financial details. *See Jud. Watch*, 449 F.3d at 152-3.

The Agency evaluated the privacy interest and determined that release of the location data and VIN information would compromise a substantial privacy interest.  Humphrey Decl. ¶ 18. Release of such information could, with very little additional effort, allow someone to identify the individual(s) involved in an incident and obtain the individual's PII.  Humphrey Decl. ¶¶ 13, 16-18.  For example, a simple internet search of the location of an incident, combined with the information published in the monthly Standing Order reports which are already public, such as the date of the incident, date of the report, type of vehicle, and any injuries, would easily permit identification of the individual driver.  Humphrey Decl. ¶ 13.  Similarly, the last six digits of the VIN, combined with the first eleven digits that are already publicly available, could easily be used to obtain a wealth of PII from the vehicle registration, including name, home address, date of birth, and any lien information.  Humphrey Decl. ¶¶ 16-18.  This is because the last six digits of a VIN provide a unique designator for a particular vehicle, compared to the first 11 digits of the VIN, which encode more general characteristics of a vehicle.  Humphrey Decl. ¶ 16; *see also* 49 C.F.R.

Part 565.[8]  This could lead to harassment, financial intrusion, unwanted media or legal attention, or other exploitation of the individual's PII for commercial gain.  Humphrey Decl. ¶¶ 18-19.

### C.  The Privacy Interest Outweighs the Public Interest

The final element of the Exemption 6 analysis is balancing the individual's privacy interest against the public's interest in the information.  *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33-34 (D.C. Cir. 2002).  "The only valid public interest in the FOIA context is one that serves FOIA's core purpose of shedding light on an agency's performance of its statutory duties." *Smith v. Dep't of Lab.*, 798 F. Supp. 2d 274, 285 (D.D.C. 2011)

Here, there is no particular public interest in the specific location information that the Post seeks.  Details on the individual drivers, including the precise location of each incident and the VIN of the vehicle involved, does not serve any public purpose in release.  Individual privacy outweighs any public interest in identifying the owners of vehicles who have experienced issues. *See, e.g.*, *Center for Auto Safety v. the Agency*, 809 F. Supp. 148 (D.D.C. 1993). The Agency has balanced the public interest—to the extent any exists, *see* Humphrey Decl. ¶ 29 ("There is, for instance, no benefit to the public knowing the specific identities of these drivers of Tesla vehicles.")—and the privacy interests of these private citizens whose information is swept up in the Agency's records, *id.*  Certainly, whatever information the Post and the public need to judge the Agency's performance of its safety mission does not extend to such individual PII.  *See Niskanen Ctr.*, 20 F.4th at 792 ("The public obviously has a strong interest in whether [the agency] fulfills its . . .  obligations . . . . But to determine whether it does so, the public has no need for the

---

[8] A summary of the specific vehicle information encoded in each digit of a VIN is available in NHTSA's *New Manufacturers Handbook*. *See* NHTSA, *New Manufacturers Handbook*: *Requirements for Manufacturers of Motor Vehicles and Motor Vehicle Equipment*, available at https://vpic.nhtsa.dot.gov/ManufacturerHandbook.pdf.

personal identifying information of" the private individuals); *Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (FOIA's purpose is not furthered "by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct").  The harm in such a release is foreseeable, and outweighs the countervailing public interest.

Summary judgment is therefore appropriate with respect to the Agency's application of Exemption 6.

## III.  The Agency Appropriately Disclosed All Reasonably Segregable, Non-Exempt Information

Where a record contains information exempt from disclosure, "reasonably segregable," non-exempt information must still be disclosed after redaction.  5 U.S.C. § 552(b).  On the other hand, even non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show with reasonable specificity that the information it has withheld cannot be further segregated.  *See, e.g.*, *Armstrong v. Exec. Off. of President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).

Here, the Agency conducted a separate analysis of the withheld information to determine whether any additional portions could be segregated and produced.  With respect to the CBI information withheld under Exemption 4, the Agency conducted a further line-by-line review of the records and determined that no further disclosure was possible without foreseeable competitive harm to Tesla and the other reporting entities, and, by extension, to the Agency itself as future disclosures would likely be less forthcoming. Kuppersmith Decl. ¶¶ 27-28.  Similarly, the Agency conducted a separate review of the information withheld under Exemption 6 and determined that

no further production was possible without violating the privacy interests of the individuals involved and thus causing foreseeable harm.  Humphrey Decl. ¶ 20.

## CONCLUSION

For the reasons set forth above, the Agency respectfully requests that this Court grant summary judgment in its favor as to all claims against it in this case.


Dated: April 2, 2025
      Washington, DC             Respectfully submitted,


                        EDWARD R. MARTIN, JR.
                        D.C. Bar No. #481866
                        United States Attorney

By:    */s/ Kartik N. Venguswamy*
                        KARTIK N. VENGUSWAMY
                        D.C. Bar No. #983326
                        Assistant United States Attorney
                        601 D Street, NW
                        Washington, D.C. 20530
                        Tel: (202) 252-1790
                        kartik.venguswamy@usdoj.gov

                        *Attorneys for the United States of America*