UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WP CO., LLC, d/b/a THE WASHINGTON POST<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION<br><br>Defendant,<br><br>and<br><br>TESLA, INC.<br><br>Intervenor-Defendant. | Civil Action No. 24-cv-1353 (TSC) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendant the National Highway Traffic Safety Administration (the "Agency"), respectfully submits this statement of material facts as to which there is no genuine dispute:

**I. The National Highway Traffic Safety Administration**

1. The Agency is an Operating Administration within the United States Department of Transportation.

2. The Agency is charged with authority to "reduce traffic accidents and deaths and injuries resulting from traffic accidents" pursuant to the National Traffic and Motor Vehicle Safety Act. 49 U.S.C. § 30101.

3. The Agency has broad information gathering authority, which includes authority to obtain information on vehicle crashes, vehicle defects related to safety concerns, and compliance with legal requirements related to the identification and implementation of safety recalls. *See, e.g.*, 49 U.S.C. §§ 30166(e), 30118-30120; 49 C.F.R. Part 510.

4. The Agency's statutory mandate extends to ensuring proactively that vehicles and equipment perform in ways that "protect[] the public against unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident." 49 U.S.C. § 30102(9).

5. Under its authority, the Agency may require, through the issuance of general or specific orders, manufacturers and operators of motor vehicles and equipment to submit information relating to the Agency's safety mandate. *See* 49 U.S.C. § 30166(g)(1)(A); 49 C.F.R. § 510.7.

6. Because the information required by the Agency can be otherwise closely held, non-public information unique to the submitter, the Agency's regulations permit submitters of information to request confidential treatment for their submissions. 49 C.F.R. Part 512.

7. Requests for confidential treatment do not guarantee that the information will be treated as confidential by the Agency, which makes its own determination of confidentiality based upon the justifications provided by the submitter. *See* 49 C.F.R. Part 512, Subparts D-E.

**II. The Second Amended Standing General Order**

8. On April 5, 2023, the Agency issued the Second Amended Standing General Order 2021-01 (the "Standing Order"). *See* Standing Order, ECF No. 1-1.

9. The Standing Order requires certain manufacturers and operators of motor vehicles and equipment that use specified automation system to report crashes and incidents to the Agency. Declaration of Michael Kuppersmith ("Kuppersmith Decl.") ¶ 12.

10. The Standing Order covers two types of these automation systems: Automated Driving Systems ("ADS") and Level 2 Advanced Driver Assistance Systems ("ADAS"). Kuppersmith Decl. ¶ 12; Standing Order at 3-5.

11. Over one hundred companies are subject to the Standing Order, including the Intervenor-Defendant in this case, Tesla, Inc. ("Tesla"), which offers ADAS in its production vehicles. Standing Order (ECF No. 1-1) Service List at 20-28.

12. The Standing Order requires incident reports to be electronically submitted using an online portal and a template form, which identifies several categories of information to be submitted. Kuppersmith Decl. ¶¶ 12, 17; *see also* Standing Order (ECF No. 1-1) at 17, 29, 39.

13. The Standing Order states that, with three exceptions, the Agency predetermined that the information submitted was deemed not to include any confidential business information ("CBI") that would be exempt from disclosure under Exemption 4. Kuppersmith Decl. ¶¶ 13-15; Standing Order (ECF No. 1-1) at 14.

14. The three exceptions for which reporting entities are allowed to claim CBI protections are limited to:

    a. the hardware and software versions of the ADAS/ADS on the vehicle at the time of the incident;

    b. whether the vehicle was within its Operational Design Domain ("ODD") at the time of the incident; and

    c. the reporting entity's narrative of the incident.

Kuppersmith Decl. ¶ 14; Standing Order (ECF No. 1-1) at 14-15.

15. Because the automotive industry is highly competitive, particularly in the emerging technology space of ADAS and ADS and the developments unique to each manufacturer in that

space, the Agency has determined that information relating to the specifics of how each submitter's software, hardware, and technology work poses a significant and foreseeable risk of competitive harm. Kuppersmith Decl. ¶ 21.

16. The Agency therefore determined that the information requested and reported in the three specified areas was more likely to reveal proprietary aspects of an ADAS/ADS design and technology. Kuppersmith Decl. ¶ 15.

17. The Standing Order provides instructions on how an entity can request CBI protections for the three specific exceptions. Kuppersmith Decl. ¶ 17; Standing Order (ECF No. 1-1) at 33.

18. The Standing Order expressly notes, however, that an entity's request for CBI protection does not guarantee that the Agency will grant such protections and instructs the entities to narrowly tailor CBI requests. Kuppersmith Decl. ¶ 16; Standing Order (ECF No. 1-1) at 14-15.

19. The Agency publishes the incident reports collected pursuant to the Standing Order on a monthly basis, after first reviewing them and redacting both personally identifiable information ("PII") and information claimed by the submitter to be CBI. Kuppersmith Decl. ¶ 18.

### III. Plaintiff's FOIA Request

20. On May 30, 2023, the Plaintiff WP Co., LLC d/b/a The Washington Post ("the Post"), submitted a FOIA request (the "Request") to the Agency seeking the Agency's "Level 2 ADAS incident report data spreadsheet in unredacted format, including the unredacted 'ADAS/ADS Version', 'Within ODD?', and 'Narrative' columns." Declaration of Shonda Humphrey ("Humphrey Decl.") ¶ 6; *see also* Request (ECF No. 1-3).

21. On January 22, 2024, the Agency provided a partial response to the Request advising the Post that the Agency had granted a set of Tesla's requests for confidential treatment of the withheld columns pursuant to the Standing Order, and that the Agency was therefore

withholding that information under Exemption 4.  Humphrey Decl. ¶ 7; *see also* Jan. 22, 2024, Letter (ECF No. 1-4).

22. The Agency noted that it had engaged in an independent analysis of the CBI requests submitted by Tesla and determined that Exemption 4 applied for a portion of those. Humphrey Decl. ¶ 10; *see also* Oct. 3, 2023, Letter (ECF No. 1-5).

23. The Agency additionally withheld PII pursuant to Exemption 6.  Humphrey Decl. ¶¶ 11-20; *see also* Jan. 22, 2024, Letter (ECF No. 1-4).

24. The Post appealed the Agency's response on March 22, 2024, asserting that the Agency's withholdings under both Exemptions 4 and 6 were improper.  Compl. ¶¶ 39-43; *see also* Appeal (ECF No. 1-7).

25. Notably, the Post did not appeal the adequacy of the Agency's search, nor has it taken issue with the Agency's search at any point during the pendency of this litigation.  *See* Compl. ¶¶ 39-43; Appeal (ECF No. 1-7); Jan. 9, 2025, Joint Status Report (ECF No. 22).

26. Before the Agency could respond to the appeal, the Post filed the present complaint. *See* Compl.

27. Subsequently, Tesla sought and was granted leave to intervene in this matter.  *See* Dec. 12, 2024, Order (ECF No. 19).

28. The Agency continued to produce records responsive to the Request from Tesla and other companies subject to the Standing Order, with appropriate withholdings of CBI and PII. Humphrey Decl. ¶ 8.

### IV. The Agency's Exemption 4 Withholdings

29. In its submissions, Tesla and other reporting entities sought CBI treatment for the three categories of information permitted by the Standing Order:  the hardware and software

version, the ODD determination, and the narrative. *See, e.g.*, Aug. 13, 2021, Letter from Tesla (ECF No. 1-6); *see also* Kuppersmith Decl. ¶¶ 19, 24; *Vaughn* Index (Ex. A to Kuppersmith Decl.).

30. The Agency made an initial determination in response to a portion of Tesla's requests—before the pendency of this litigation—that Tesla had sufficiently established that the information in question was "customarily and actually kept private," that it was provided under a statutory framework which "provides an assurance of privacy," and that the release of the information would "foreseeably harm Tesla's commercial or financial interest" in a competitive market. *See* Oct. 4, 2023, Letter from the Agency (ECF No. 1-5); *see also* Kuppersmith Decl. ¶¶ 9-10, 19, 24; *Vaughn* Index (Ex. A to Kuppersmith Decl.).

31. Attorneys for the Agency continued to review Tesla's and other reporting entities' requests for CBI and individually evaluated each request in light of FOIA requirements, in accord with the Agency's standard procedure for reviewing CBI requests. Kuppersmith Decl. ¶ 19.

32. After performing an individualized review of all the relevant CBI requests, the Agency determined that, in most instances (with the exceptions described further below), the reporting entities had submitted the information with respect to all three categories under the Agency's "framework of statutory and regulatory provisions," which provided "an assurance of privacy for confidential business information." Kuppersmith Decl. ¶ 20.

33. After performing an individualized review of all the relevant CBI requests, the Agency determined that, in most instances (with the exceptions described further below), the reporting entities "customarily and actually kept the information private" with respect to all three categories of information. Kuppersmith Decl. ¶ 20.

34. After performing an individualized review of all the relevant CBI requests, the Agency determined that with respect to the hardware and software versions, it was reasonably

foreseeable that publicly releasing the information would harm the reporting entities' "commercial or financial interests" and that the version information was therefore exempt from disclosure under Exemption 4. Kuppersmith Decl. ¶ 20.

35. After performing an individualized review of all the relevant CBI requests, the Agency determined that releasing the ADAS hardware and software version information "would impact the willingness of the reporting entities' to provide confidential information, foreseeably harming" the Agency's safety mission by limiting the information submitted and available to the Agency. Kuppersmith Decl. ¶¶ 20, 28.

36. After performing an individualized review of all the relevant CBI requests, the Agency determined that, with respect to the ODD determinations, it was reasonably foreseeable that publicly releasing the information would harm the reporting entities' "commercial or financial interests" and that the ODD determinations were therefore exempt from disclosure under Exemption 4, subject to two specific exceptions. Kuppersmith Decl. ¶ 20.

37. After performing an individualized review of all the relevant CBI requests, the Agency determined that, in two specific instances, Tesla had made public statements regarding the subject incident, including the ODD determination for those incidents, and that Tesla therefore no longer treated that information as confidential and private. Kuppersmith Decl. ¶ 21(e).

38. After performing an individualized review of all the relevant CBI requests, the Agency determined that releasing the ODD determinations—other than the two specific instances described above—"would impact the willingness of regulated entities to provide confidential information, foreseeably harming" the Agency's safety mission by limiting the information submitted and available to the Agency. Kuppersmith Decl. ¶ 20.

39. After performing an individualized review of all the relevant CBI requests, the Agency determined that, with respect to most of the narratives, it was reasonably foreseeable that publicly releasing the information would harm the reporting entities' "commercial or financial interests" and that the narrative information was therefore exempt from disclosure under Exemption 4, subject to certain exceptions and limitations. Kuppersmith Decl. ¶ 20.

40. In particular, the Agency determined that some portions of Tesla's narratives did not warrant CBI protections as they were not provided to the Agency under an assurance of privacy and were not actually kept confidential by Tesla. This included the source of the incident information, information on available data, the date on which Tesla was notified of a crash, the "General Damage/Contact Area" of the incident, the Vehicle Owner's Questionnaire numbers, and the dates of other contact with the Agency about the incident. Kuppersmith Decl. ¶ 21(a)-(d).

41. The Agency determined that releasing the remainder of the narrative information "would impact the willingness of regulated entities to provide confidential information, foreseeably harming" the Agency's safety mission by limiting the information submitted and available to the Agency. Kuppersmith Decl. ¶¶ 20, 28.

42. The Agency then conducted a separate, line-by-line review of the withholdings to determine whether any of the otherwise withheld information could be segregated and produced, notwithstanding the reporting entities' requests for CBI treatment. Kuppersmith Decl. ¶ 27.

43. Based on this analysis, the Agency determined that no additional information could be disclosed without causing foreseeable harm to both the reporting entities and to the Agency. Kuppersmith Decl. ¶ 28.

V. **The Agency's Exemption 6 Withholdings**

44. The Agency determined, upon review of the information, that four categories of information submitted pursuant to the Standing Order included PII that qualified for withholding under Exemption 6. Humphrey Decl. ¶¶ 11-20.

45. The Agency withheld the specific geographical locations of reported crashes, including the latitude, longitude, address, and zip code of each incident. Humphrey Decl. ¶ 13.

46. The Agency withheld certain portions of documents that included a signature. Humphrey Decl. ¶ 14.

47. The Agency withheld the name, phone number, and email address of the crash investigator (where applicable) for each incident. Humphrey Decl. ¶ 15.[1]

48. The Agency withheld the last six characters of each Vehicle Identification Number ("VIN")[2] for each vehicle involved in an incident. Humphrey Decl. ¶ 16.

49. With respect to the location data, the Agency determined that disclosure of this information could easily permit someone to identify the individual(s) involved in any given incident and, in turn, derive personally identifiable details. Humphrey Decl. ¶ 13.

50. The Agency additionally determined that the disclosure and subsequent identification of individuals through the disclosure of the location data would reasonably and foreseeably harm those individuals' substantial privacy interests, exposing them to unwanted intrusion, harassment, identification and contact by the media or attorneys, and the exploitation of their PII for commercial or private gain. Humphrey Decl. ¶¶ 13, 19.

---

[1] The Post is not challenging the withholding of the signature or the crash investigators' information discussed in paragraphs 43 and 44.

[2] A VIN is 17 characters and the first eleven are already disclosed in the Agency's monthly release. Humphrey Decl. ¶ 17.

51. With respect to the VIN, the Agency determined that the disclosure of the final six characters could, in conjunction with the first eleven characters already disclosed, easily permit someone to identify the individual vehicle involved in any given incident and therefrom derive the name, address, date of birth, lien information, and other PII of the vehicle's registered owner. Humphrey Decl. ¶¶ 16, 18.

52. The Agency determined that the disclosure and subsequent identification of individuals through the disclosure of the VINs would reasonably and foreseeably harm those individuals' substantial privacy interests, exposing them to unwanted intrusion, harassment, identification and contact by the media or attorneys, and the exploitation of their PII for commercial or private gain. Humphrey Decl. ¶¶ 16-19.

53. The Agency then conducted a separate, line-by-line review of the withholdings to determine whether any of the otherwise withheld information could be segregated and produced. Humphrey Decl. ¶ 20.

54. After that analysis, the Agency determined that no additional information could be disclosed without violating the privacy interests of the individuals whose information was at issue and without therefore foreseeably causing them harm. Humphrey Decl. ¶ 20.

Dated: April 2, 2025
    Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR.
D.C. Bar No. #481866
United States Attorney

By:   /s/ *Kartik N. Venguswamy*
KARTIK N. VENGUSWAMY
D.C. Bar No. #983326
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 252-1790
kartik.venguswamy@usdoj.gov

*Attorneys for the United States of America*