UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WP COMPANY LLC
d/b/a THE WASHINGTON POST**,

Plaintiff,

v.

**NATIONAL HIGHWAY TRAFFIC
SAFETY ADMINISTRATION**, *et al.*,

Defendants.

Civ. A. No. 24-cv-1353

**SUPPLEMENTAL DECLARATION OF SHONDA HUMPHREY**

I, Shonda Humphrey, hereby declare:

1.      I am an Attorney Advisor in the Legislation and General Law Division of the Office of the Chief Counsel at the National Highway Traffic Safety Administration ("NHTSA" or "agency"). NHTSA is an operating administration within the United States Department of Transportation. I am an attorney licensed to practice law in Virginia.

2.      I make the following statements based upon my personal knowledge, upon information available to me in my official capacity.

3.      I previously submitted a declaration as an exhibit to NHTSA's April 2, 2025 motion for summary judgment in this case (ECF No. 26, Attachment No. 5).

4.      I submit this supplemental declaration in response to the Court's Memorandum Opinion ("Mem. Op."), ECF No. 36, on March 25, 2026, in which the Court granted in part and denied in part Defendant NHTSA's and Intervenor-Defendant Tesla's separate Motions for Summary Judgment (ECF Nos. 25 and 26).  Mem. Op. at 1. The Court denied Plaintiff's Cross

Motion for Summary Judgment without prejudice.  *Id*.  The Court ordered Defendants to "provide supplemental declarations addressing the court's stated concerns regarding NHTSA's application of Exemptions 4 and 6…."  Order dated March 25, 2026 ("Order"), ECF No. 37.

5.        As to Exemption 6, Plaintiff only seeks "review of the agency's refusal to disclose information about the specific location of the reported crashes, including the latitude, longitude, address, and zip code of the accidents" reported to NHTSA under its Standing General Order ("SGO").  Mem. Op. at 24.  In determining whether such information was properly withheld under Exemption 6, the Court found that "a genuine dispute of material fact exists regarding the extent to which disclosure of precise crash location data implicates individuals' privacy interests." *Id.* at 26.  In arriving at this decision, the Court explained that it did not have a sufficient explanation from NHTSA or the record to "discern the full extent of the privacy interests at stake nor properly weigh those interests against the public's [interest]" to rule in the government's favor. Mem. Op. at 28. The Court noted that "the Post only seeks review of the agency's refusal to disclose information about the specific location of the reported crashes, including the latitude, longitude, address, and zip code of the accidents" reported to NHTSA under its Standing General Order ("SGO"), *id.* at 24, and found that "a genuine dispute of material fact exists regarding the extent to which disclosure of precise crash location data implicates individuals' privacy interests." *Id.* at 26.

**APPLICATION OF FOIA EXEMPTION 6**

6.        NHTSA has long considered specific crash incident location information, including the information listed in paragraph 5, as constituting or implicating personally identifying information ("PII") subject to protection under FOIA Exemption 6. This is because the information can readily be used to obtain an individual's name and other PII by performing

simple searches using that information. Protecting PII is necessary to comply with Federal law and shields the affected individuals from invasions of their personal privacy and other harms.

7.      In this circumstance, the relevant records may raise even greater privacy concerns than other types of vehicles crashes because these records do not just relate to vehicle crashes broadly, but are limited to a narrow subset of crashes involving specific technologies.[1] The narrow pool of incidents makes it easier to identify the individuals involved through simple internet searches with just a few additional pieces of information, such as the withheld location data—especially considering that NHTSA already provides the city and state of each incident.[2]

8.      When a bad actor obtains information about an individual involved in a vehicle crash—for example, his or her name, other PII, and specific crash incident location—bad actors can link a specific person not only to that individual's involvement in a vehicle crash, but also descriptions of that person's injuries and medical information. The data that NHTSA already releases publicly details whether an incident involved an air bag deployment, injuries requiring hospitalization, or fatalities.

9.      As such, a bad actor may link a specific *person* to a specific *crash* at a specific *moment in time*, which can also be used to reveal that person's routines and associations, such as proximity to a home, workplace, medical clinic, or place of worship. This type of data could thus lead to unwanted location tracing of a vulnerable individual, stalking, targeted harassment,

---

[1] Through April 2026, ADAS crashes reported under the SGO have never exceeded 200 in any given month. *See* https://www.nhtsa.gov/laws-regulations/standing-general-order-crash-reporting#level-2-adas.

[2] Unmasking concerns have intensified exponentially in recent years with the significant increase in the collection and long-term storage of information, substantial improvements in the ability to search for and link bits of information, and the growing power and widespread accessibility of artificial intelligence.

unwanted public attention, and the exposure of sensitive information about that person's routine.

10.     Private citizens have a substantial privacy interest in retaining a reasonable level of locational anonymity, even while traveling on public roads. And while the records relate to incidents that occurred in public, the personal information that is withheld relates to private individuals, not public employees. These individuals may not even be aware the information has been submitted to NHTSA.

11.     NHTSA has long maintained that disclosure of specific crash incident location information, including the information listed in paragraph 5, would foreseeably harm the individual's substantial privacy interest and constitute an invasion of privacy by allowing others to obtain and exploit the individual's name and other PII for commercial or private gain. This may include subjecting the individual to unwanted intrusion into certain experiences and solicitation, harassment, and contact by the media, attorneys, and other interested parties— merely because the individual was in a crash involving a vehicle that happens to be equipped with certain kinds of technology.

12.     NHTSA has not identified a public benefit in knowing the specific crash incident location information that sufficiently outweighs the individual's substantial privacy interests described above.[3]

13.     NHTSA publishes its investigations and specifically links them to SGO reports when relevant, making its enforcement activities transparent. The precise locations of certain third-party incidents related to NHTSA's investigation are irrelevant to the assessment of

---

[3] To the extent that the disclosure of the information would be used by interested entities to assess the accuracy of crash information reported to the agency, the information must already be available elsewhere to provide an independent baseline to check against, obviating the need for disclosure by NHTSA now.

NHTSA's performance of its statutory duties and shed no light on NHTSA's conduct. NHTSA investigates safety defects in vehicles, regardless of where the underlying incidents occur. However, NHTSA does release all of the other crash location information provided to the agency, so that the public is aware of the city and state of the crash and other information about the conditions involved—including but not limited to the roadway description, the roadway type, the weather, what the subject vehicle crashed with, and the identity of the investigating agency—without the more granular location information that the agency has long viewed as invading privacy interests. NHTSA limited its withholding to just the specific bits of location information that could easily be used to link each incident to specific individuals.

## CONCLUSION

14.    After careful examination of the records at issue, NHTSA identified information that would, if disclosed, cause a clearly unwarranted invasion of personal privacy based on the agency's long held practices and understanding of its legal obligations.

15.    The agency weighed the individuals' interests in maintaining privacy that would be at risk upon disclosure of the information listed in paragraph 5, against the public interest in disclosure.

16.    Consistent with governing law and the agency's practices and policies, the FOIA Office staff determined the information listed in paragraph 5, was appropriate for nondisclosure under FOIA Exemption 6.

17.    Any further segregation or disclosure of the information withheld under Exemption 6 is reasonably expected to foreseeably harm the substantial privacy interests of the individuals.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct to the best of my knowledge.

Executed on July 8, 2026

                               _____

                               Shonda Humphrey
Attorney Advisor
Office of the Chief Counsel
National Highway Traffic Safety Administration
U.S. Department of Transportation